Filed 2/24/23  P. v. Hackett CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>DONAVAN DEAN HACKETT,<br><br>    Defendant and Appellant. | C096170<br><br>(Super. Ct. Nos. 19F4855, 21F1285) |

Defendant Donavan Dean Hackett appeals his six-year prison sentence on multiple grounds.  We conclude that the trial court abused its discretion by imposing the upper term sentence without satisfying the requirements of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567).  As the error was not harmless, we vacate the sentence and remand for a full resentencing.

1

FACTUAL AND PROCEDURAL BACKGROUND

In August 2019, defendant pleaded no contest to unlawful possession of a firearm with a juvenile prior (Pen. Code, § 29820)[1] and possession of a device for injecting a controlled substance (Health & Saf. Code, § 11364, subd. (a)) (case No. 19F4855). The trial court suspended imposition of defendant's sentence, placed him on formal probation for three years, and required he serve 90 days in jail.

In March 2021, defendant pleaded no contest to first degree residential burglary (§ 459) (case No. 21F1285). Defendant stipulated that the factual basis for the plea was found in the Shasta County Sheriff's Department report. The plea agreement contained a *Cruz*[2] waiver, and provided that if defendant did not violate the *Cruz* waiver, he would have two years of probation and spend 180 days in county jail. It further specified that if defendant did violate the *Cruz* waiver, his sentence was "open on [the burglary count] (max 6 years)." The agreement stated that the minimum term for burglary was two years and the maximum term was six years in prison. Defendant also admitted to violating probation in case No. 19F4855.

At the plea hearing, defense counsel explained that this *Cruz* waiver meant that "[i]f [defendant] comes back for sentencing without any problems, it will be 180 days county jail. If there is an issue, obviously it's an open plea to the six-year max." The trial court likewise told defendant, "Should you violate probation, you could receive up to six years in prison as a result of the plea." When revoking and reinstating probation, the trial court reiterated that if defendant failed to appear when required, "then all bets are off and you are looking at six years in prison. [¶] Do you understand?" Defendant responded, "I understand."

_____

[1]     Undesignated statutory references are to the Penal Code.

[2]     *People v. Cruz* (1988) 44 Cal.3d 1247.

Defendant subsequently failed to appear for sentencing on three occasions. In December 2021, the trial court found that defendant violated his *Cruz* agreement by failing to appear in court, despite repeated orders.

On April 6, 2022, defendant appeared at his sentencing hearing. At the outset, the prosecution asked if the trial court had a tentative ruling, and the trial court answered, "Yes. I am going to sentence [defendant] to six years in prison." Defense counsel urged the trial court to consider residential drug treatment instead, and the trial court responded that it had considered the option "as a prospect." However, when it reviewed defendant's record, the court concluded that he was "too young, too reckless" and not ready for treatment.

The trial court explained that defendant "had some violations in April and then June of 2020 and then September of 2020 and then February of 2021, April 2021. Then he picked up the new case. And when he picked up the new case, it was a case whereby he was going to get probation." But, the court continued, instead of returning to court to "get his probation, [defendant] took off for a period of time, and he ultimately was arrested." The court also noted that after his arrest, defendant was "talking jail talk to his mom," who he had previously said he would avoid because they used drugs together.

The trial court then quoted its statement from the plea hearing, where it said that defendant was " 'looking at six years in prison' " if he failed to return in April 2021. It explained, "This was a negotiated disposition between me and [defendant], and he said, 'I understand.' So he knew if he took off that he was going to get six years in prison. That was the stipulation by way of [defendant] and the Court and by way of his change of plea and the discussions of the plea. [¶] So I am going to give him what I told him I would even though there would have been differences along the way had [defendant] not really generated that jail talk all along."

Defense counsel interjected that she did not know the "interplay between the new sentencing laws with regards to the aggravating factors when there's a Cruz waiver

3

violation," and asked the court to consider at least the midterm based on defendant's youth and lack of a prior prison sentence. The trial court responded, "Well, he was told that. So he said, 'I understand.' " The court then stated that defendant was told, " 'But if you don't show up, you just blow off the Court, that means, you know, you are going to get six years. Do you understand that?' 'I understand.' [¶] So the fact is he did understand, he did acknowledge that, that was the stipulated agreement. . . . So I am finding that this was the agreement that was reached. . . . [¶] So I am sentencing [defendant] as I told him that I would, and that is to the aggravated term . . . of six years in prison."

Defense counsel responded, "[J]ust because some of these new sentencing laws are getting hashed out, I would just like to note my objection to the aggravated term on the record." The prosecutor rejoined that it would "like to bring up some more aggravating factors that the Court has mentioned," and said that the victim was particularly vulnerable, that defendant took advantage of a position of trust because he knew the victim, and that defendant was receiving a favorable outcome because the sentence in his other case would run concurrent rather than consecutive to the six-year term.

The trial court responded, "Yeah. I thought that the victim was exceptionally vulnerable," citing the victim's statement in the probation report. The court continued: "[B]ack last year when [defendant] could have received the deal of his lifetime, after I read [the victim statement], when I was planning on sentencing [defendant] to probation, I thought, jeez, what a great deal that is. [The stolen property] was a vintage gun in premium condition, so what [defendant] did—he likes guns. His first crime involved possession of a handgun. [¶] So the aggravated term is not only appropriate because of the agreement that I reached with [defendant,] but also because of the factors in aggravation outweighing those in mitigation and the long failure to appear to court demonstrating a lack of interest in complying with court orders."

4

Defense counsel again objected "because those aggravating factors weren't pled and proven as required by the law now." The prosecution said, "I don't believe they have to, your Honor," and the court rejoined, "Well, I am making the findings today as to those, so thank you."

The trial court sentenced defendant to the aggravated term of six years in prison in case No. 21F1285 and the middle term of two years in prison in case No. 19F4855, to be served concurrently. Defendant appealed.

DISCUSSION

Defendant contends the trial court abused its discretion at sentencing in several ways: by erroneously believing that a *Cruz* waiver violation resulted in a six-year stipulated term; by failing to find aggravating factors in compliance with newly amended section 1170, subdivision (b); and by failing to apply the presumptive lower term given defendant's youth. (§ 1170, subd. (b)(6).) He argues that the errors were not harmless and require remand for resentencing. We agree with defendant that the imposition of the upper term failed to comply with the amended version of subdivision (b) of section 1170, and that the error was not harmless. We therefore need not consider defendant's other arguments, as he is regardless entitled to remand for a full resentencing.

A.     *Senate Bill 567*

Effective January 1, 2022, Senate Bill 567 amended section 1170 to limit the trial court's discretion to impose a sentence greater than the midterm. (§ 1170, subd. (b)(1), (2), as amended by Stats. 2021, ch. 731, § 1.3.) To impose a sentence beyond the midterm, the sentence must be justified by the aggravating factors, and the facts underlying the circumstances must have been stipulated to by defendant or found true beyond a reasonable doubt, except that the trial court may rely upon certified records of conviction to find a prior conviction proven. (§ 1170, subd. (b)(1)-(3), as amended by Stats. 2021, ch. 731, § 1.3.)

5

B.    *Analysis*

      1.    *Aggravating factors*

The trial court's reliance on various aggravating factors to support imposition of the upper term did not comply with Senate Bill 567.

We initially note that the trial court's articulation of the aggravating factors was somewhat unclear, hindering our review. However, our best reading of the record reveals that the trial court expressly relied on three aggravating factors: (1) defendant stipulated to the upper term in the event he violated his *Cruz* waiver; (2) the victim was particularly vulnerable; and (3) defendant repeatedly failed to appear in court, which evinced indifference to compliance with court orders.[3]

With respect to the first factor, the record does not reflect that defendant stipulated to the upper term if he violated the *Cruz* waiver. The plea form clearly states that defendant agreed to an "open" plea, with exposure of two years minimum and six years maximum if he violated the *Cruz* waiver. His attorney reiterated at the plea hearing that it was an "open plea to the six year max." The trial court explained that the plea form meant defendant "could receive *up to* six years in prison" (italics added), and defendant confirmed his understanding that if he failed to appear he was "looking at six years in prison." Thus, the plea was explicitly an open plea, and the trial court's (and counsel's) comments to defendant at the plea hearing are best understood as describing defendant's *potential* maximum sentence. They do not constitute a stipulation between the court and defendant to a six-year term. Accordingly, defendant did not stipulate to this factor.

---

[3]    The People contend that the trial court relied on two additional aggravating factors, i.e., that defendant was on probation when he committed the burglary and that his prior performance on probation was unsatisfactory. But the record on these factors is unclear. It appears that the trial court referenced defendant's "various violations of probation" to explain why it was imposing a prison sentence rather than sending him to drug treatment. It did not expressly list either factor as an aggravating factor supporting imposition of the upper term.

Defendant also did not stipulate that the victim was particularly vulnerable, or that he repeatedly failed to appear in court, demonstrating indifference to following court orders.[4] Finally, neither the trial court nor a jury found any of the aggravating factors true beyond a reasonable doubt at a trial. Accordingly, resentencing is required unless we find the error was harmless.

### 2. *Harmless error analysis*

To assess harmless error, we follow the two-step analysis set forth in *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110-1115 (*Zabelle*).

First, we must address whether "the trial court *could* have imposed the upper term sentence" (*Zabelle, supra*, 80 Cal.App.5th at p. 1112) consistent with the Sixth Amendment's jury trial guarantee under the standard set forth in *People v. Sandoval* (2007) 41 Cal.4th 825, which requires us to determine whether the jury would have found true beyond a reasonable doubt at least one of the aggravating circumstances the trial court relied on. (*Sandoval, supra*, at p. 839.) Here, we agree with the People that a jury would have found true beyond a reasonable doubt that defendant had a "long failure to appear to court demonstrating a lack of interest in complying with court orders," given his undisputed failure to appear in court on multiple occasions. Accordingly, there is no Sixth Amendment prejudice.

Turning then to the second step under *Zabelle*, we must assess whether the court "*would* have imposed the upper term sentence even absent the error" (*Zabelle, supra*, 80 Cal.App.5th at p. 1112) under the state law standard set forth in *People v. Watson* (1956)

---

**4** Even if we interpreted the trial court's discussion of defendant's failures to appear to mean that it found his performance on probation was unsatisfactory (Cal. Rules of Court, rule 4.421(b)(5)), defendant neither stipulated that he repeatedly failed to appear nor that his failures to appear rendered his performance on probation unsatisfactory. Similarly, defendant's admission of several (unrelated) probation violations does not constitute a stipulation that his performance on probation was *unsatisfactory*.

46 Cal.2d 818. "In particular, we must consider whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error. [Citation.]" (*Zabelle*, at p. 1112.) " 'A "reasonable probability" "does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." [Citation.]' [Citations.]" (*People v. Soto* (2022) 79 Cal.App.5th 602, 610.)

We find that it is reasonably probable that the trial court would have chosen a lesser sentence had it not erred as described above. When sentencing defendant, the trial court afforded great weight to defendant's purported "stipulation" to the upper term, referencing it multiple times, and concluding the aggravated term was appropriate "because of the agreement that I reached with [defendant]," before listing other aggravating factors. Certainly, if the trial court believed defendant agreed to the upper term, this fact would not simply weigh in favor of the upper term; it would be dispositive. Moreover, the court referenced the victim's vulnerability and defendant's repeated failures to appear only after announcing the six-year sentence, and following prompting by the prosecutor to list additional aggravating factors. And, it did not give any particular weight to those two factors. Thus, it is reasonably probable that the trial court would have imposed a lesser sentence had it complied with amended subdivision (b) of section 1170.

As the trial court's error was not harmless, we vacate the sentence and remand for the trial court to conduct a full resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## DISPOSITION

The sentence is vacated and the matter remanded with directions to resentence defendant in a manner consistent with current law.  The judgment is otherwise affirmed.

       KRAUSE       , J.

I concur:

     McADAM     , J. Pro Tem.*

I concur in the result:

     MAURO     , Acting P. J.

---

\*      Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.